Mr. Justice Scott delivered the opinion of the Court. This was an, action of ejectment for atractofland claimed under a tax collector’s deed, tried in the court below upon the general issue. At the trial there, the plaintiff was allowed to read in evidence? against the objection of the defendant, a certified copy of an entry made in the register of certificates granted to purchasers of public lands at the Land Office at Fayetteville,by which it appeared that one Joseph Stout had purchased the land in question from the General Government, in January, 1839; and also a paper purporting to be a duly recorded deed executed by one Hamilton as sheriff and tax collector of Johnson county, granting the land in question to the said plaintiff upon the surrender by him of a certificate of purchase at a tax sale, that, some five years before, had been issued by one William Adams, as ex-sheriff and ex-of-ficio tax collector of Johnson county, to one Alston, who had assigned it to the plaintiff. The main question that arises in this case, is as to the admissibility in evidence of these two papers; the other suggested, as to a formal defect in the bill of exceptions, being untenable as we think. As to the first mentioned paper, it is, upon its face, within the provision of our statute (Dig., p. 490, ch. 66, sec. 6.) Andasitdoes not appear that any suspicion was thrown upon its authenticity, or that there was any such specification of want of authentication as to bring that question here for revision, we must presume that the court below used every proper precaution to prevent being, imposed upon by a forged instrument, and shall therefore hold that, in allowing, it to be read in evidence, there was. no error. With regard to the reading of the alleged deed, however,, a more difficult matter is to1 be determined, involving.not only its authenticity, but its validity. As to the former, however, it seems, well enough authenticated, because, purporting to b© a deed for lands of a non-resident sold for táxes, it was sufficient that it was. “acknowledged and recorded as other conveyances of land,” (Dig. p. 888, ch. 139 sec. 112); and it waa not necessary that it should have been acknowledged in the same manner as deeds for land sold under execution, as is directed for lands of residents of the county, where sold for taxes. (Dig., p. 885, ch. 139, sec. 91. Ib. 505, sec. 62). But as to the latter, although it is thepolicy of our laws to uphold tax titles by every liberal intendment consistent with the rules-of law, as is manfest by the provision of the statute that “No exception shall be taken to any deed made by a collector for lands sold for the payment of taxes,, but such as shall apply to the real merits of the case, and are consistent with a liberal and fair interpretation of the intention of the General Assembly,” Dig., p. 889, sec. 113), and from other provisions of the revenue law and of the law for the limitation of suits for land; (Pamph. Acts of 1850, p. 145,) nevertheless, we have no authority to depart from these rules of law in order to sustain any pretended sale of property by a collector of taxes under color of his office beyond the true boundary of his authority. And this, in reference to the sale of lands, is no general authority to sell, but only to sell such lands as are liable by law to be sold for taxes; and these only in the manner prescribed by law. And thus he may not only pass his defined boundary in the act of selling, but in the mode of the act; and when he does so, his acts, although under color of authority, are in law but' the private acts of a private person. The party, who sets up title, must furnish the evidence necessary to support it. When, for this purpose, he relies upon a tax collector’s grant, whose authority is not general but limited, as we have seen, both in its scope and in the mode of its exercise, to sustain its operative force as such, he must exhibit all the substantial pre-requisites to his authority to make the grant. Because it is alone from these substantial pre-requisites, that the authority to make the grant can spring, and beyond theirpale it can have no vitality. Héncethe rule in such cases of authority, whether entrusted to an officer or to an individual, that it must be strictly pursued and strictly proved. And hence, too, the obligation upon one setting up such a grant to show the performance of these substantial pre-requisites, nothing being presumed as to their performance. Nor has our legislature changed these general rules of law as to tax collectors’ authority, otherwise than in prescribing the mode in which the performance of these pre-ilquisite acts shall be shown by recitals to be contained in the deed prescribed, and declaring its elfect, when so executed, both as an operative grant and as an instrument of evidence to sustain its operation as such. And, having done so, has left no ground to presume that any other mode of sale and grant was intended to be set on foot or provided for, for lands sold for taxes by the tax collectors. When tested by these principles, the recitals contained in the alleged deed in question, after allowing every aid that can be afforded them by the liberal provisions of the statute above quoted, fall far short of a statement of all the substantial pre-requisites of the tax collector’s authority to sell and convey the land in question. And to this extent at least, the recitals in such a deed must be regarded as one of its essential elements. The sale was not made on the first Monday of November, the day fixed by law for the annual sales of non-resident’s lands, (Dig., p. 886, sec. 95), and it was not lawful for it to have been made on any other day, unless “upon good cause shown,” the county court had fixed another day in an order, in which the time so fixed had been expressed. (Ib., sec. 129). And there is no recital in the alleged deed that any such order was ever made. Nor can this substantial omission in the statement of authority to sell on the day on which the sale of the land in question seemed to have been made, be in any way aided by all the possible benefits of the act for the relief of Henry A. Engles, approved the 12th January, 1843, (Pamph. Acts of that year, p. 197), because that act does in no way necessarily dispense with the action of the county court in fixing a day other than the regular one appointed by law for the sale of non-residents’ lands: On the contrary, seems rather to confirm it in the provision that En-gles should “have full power to coerce payment by all the or-din ary legal means prescribed by law,” the limit fixed in that act (the 1st day of July) being but the limit of the extraordinary privileges conferred upon him. And besides, the benefits of this act were afforded to Engles himself, only upon the terms of his paying into the State treasury all the moneys for which he was liable, other thanlhe moneys for the non-residents1 lands that he had failed to sell, and no other sheriff or ex-sheriff could have claimed its advantages, unless they had done the like, if any thing was due from them. And there is no recital in the alleged deed that ex-sheriffAdams had done so, or was notliable. And this latter objection applies with equal force to the other broad objection that the sale in question was made by an ex-collector after the end of his term of office. It is clear, therefore, in our opinion, that for want of any recital as to the action of the county court in fixing the day of sale in question, (the same not having been upon the day fixed by law,) and because the sale was made by an ex-collector after the expiration of his term of office, that the alleged deed is inoperative as such under our general revenue law, and is equally so under the particular act of the legislature cited and relied upon, for the same reason as to the want of the action of the county court, as well as for the additional reason that it contains no recitals, either general or special, whereby any authority can be derived from the act. We therefore hold that the alleged deed as of no validity, and that the court below erred in permitting it to be read in evidence. The judgment must be reversed. Mi\ Justice Walker did not sit in this case.